# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER STEPHENS, FAYTH BOND,      :
RITA GETTIS, KRISTI MAYO,           :
DEONICA JONES, BELINDA ZACHARY,     :
And TRACEY GENERAL,                 :
                                    : CIVIL ACTION FILE NO.:
        Plaintiffs,                 :
                                    : 1:13-CV-01528-RWS-GGB
        v.                          :
                                    :
FULTON COUNTY, SHERIFF THEODORE     :
JACKSON, in his Official            :
Capacity as the Fulton County       :
Sheriff,                            :
                                    :
        Defendant.                  :
_____:

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendant Sheriff Theodore Jackson, in his
Official Capacity as Sheriff of Fulton County, Georgia
(hereinafter "Defendant" or "Sheriff Jackson"), by and through
the undersigned counsel, and hereby files this Defendant's
Memorandum of Law in Support of his Motion for Summary Judgment.

**INTRODUCTION**

On May 6, 2013, Plaintiffs Jennifer Stephens, Fayth Bond,
Rita Gettis, Kristi Mayo, Deonica Jones, Belinda Zachary, and
Tracey General ("Plaintiffs") filed a complaint against
Defendant Theodore Jackson individually and in his Official

1

Capacity as the Fulton County Sheriff. [Doc. 1][1]. Plaintiffs assert that the Fulton County Sheriff's Office random drug test given to them on August 7, 2012, violated Title VII and 42 U.S.C. § 1983 which deprived them of their Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure and the right to be free from unlawful discrimination.(Compl. ¶ 111). Specifically, Plaintiffs' allege that female monitors from the Fulton County Sheriff's Office watched them urinate and/or observed their private parts during their respective random drug screens. (Compl. ¶¶ 31,49,59,66,76,88,95,& 105). Plaintiffs do not contend that the Defendant was not authorized to implement a random drug testing policy for sworn and civilian employees of the Fulton County Sheriff's Office and/or the Fulton County Jail.

## STATEMENT OF FACTS

Defendant is the duly elected Sheriff of Fulton County, Georgia. (Jackson Aff., ¶ 2). Plaintiffs were all employees of the Fulton County Sheriff's Office who worked in the Fulton County Jail ("FCJ") on August 7, 2012. Moreover, all sworn and civilian staff assigned to work in the FCJ and who come into

---

[1] On July 8, 2013, a Motion to Dismiss was filed on behalf of Sheriff Theodore Jackson. Subsequently, on November 27, 2013,  The Court dismissed all of Plaintiffs' claims except for Plaintiffs' Title VII and 42 U.S.C. § 1983 claims against Sheriff Jackson in his official capacity.

contact with inmates are deemed to work in high risk jobs and, are subject to random drug testing for evidence of use of illegal drugs. (Adger Aff., ¶ 6).

The Fulton County Jail ("FCJ") is a large Pre-Trial Detention Facility with over three thousand beds.(Adger Aff.,¶ 4). The FCJ employs over 650 fulltime sworn and civilian staff and operates 24 hours a day, seven days week. (Adger Aff., ¶ 4).

Furthermore, the Fulton County Sheriff's Office and/or the Fulton County Jail maintains a zero tolerance for drug and alcohol use among sworn staff, civilians, inmates, and visitors to the jail. (Adger Aff., ¶ 5). Additionally, the Fulton County Sheriff's Office has promulgated and implemented a "Substance abuse, Alcohol and Random Drug and Alcohol Testing" Policy. (Jackson Aff., ¶ 5). Pursuant to this policy, all sworn and civilian staff are subject to random testing for alcohol, illegal drugs and/or controlled substances. (Jackson Aff., ¶ 5). Moreover, sworn and civilian staff who work in the FCJ and who come into contact with inmates are deemed to work in high-risk jobs. (Adger Aff., ¶ 6). The Plaintiffs worked in the Fulton County Jail and are deemed to work in high-risk jobs and have regular contact with jail inmates. (Adger Aff., ¶ 6).

Plaintiff Jennifer Stephens worked as a librarian in the FCJ and had contact with jail inmates. (Stephen Dep. 135:1-18 (November 10, 2014).

Plaintiff Fayth Bond also worked as a librarian in the FCJ and had regular contact with jail inmates. (Boyd Dep. 18:25; 30:1-25).

Plaintiff Gettis worked as a librarian in the FCJ had regular contact with jail inmates. (Gettis Dep. 57:11-15; 67:8-11; 67:20-22).

Plaintiff Tracey General worked in the FCJ as a Detention Officer and worked directly with jail inmates. (General Dep. 30:1-22).

Plaintiff Deonica Jones worked in the FCJ as a Detention Officer and worked directly with jail inmates. (Jones Dep. 17:1-9).

Plaintiff Kristi Mayo also worked in the FCJ as a Detention Officer and worked directly with jail inmates. (Mayo Dep. 21:11-12).

Plaintiff Belinda Zackary worked in the FCJ as a Security Specialist and worked directly with jail inmates. (Zackary Depo. 12:19-25).

On August 7, 2012, Plaintiffs were administered a random drug test at the Fulton County Jail pursuant to the Fulton

4

County Sheriff's Office Random Drug Testing Policy. (Jackson Aff.,¶ 5); (Compl.¶¶ 24,46,59,72,85,93,&102). On August 7, 2012, Plaintiffs were escorted, individually and at different times, by female officers of the Fulton County Sheriff's Office into partitioned bathroom stalls located on the first floor of the Fulton County Jail in order to provide urine samples pursuant to the Fulton County Sheriff's Office Random Drug Testing Policy. (Jackson Aff., ¶ 5).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any **material fact** (emphasis added), since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant is not required to negate its opponent's claim, but may discharge its burden merely by "pointing out to the district court that there is an absence of

evidence to support the non-moving party's case." Id. at 323, 325. When the movant's burden is met, the non-moving party must then "go beyond the pleadings" and offer evidence designating "specific facts showing there is a genuine issue for trial." Id. at 324. In rebutting a motion for summary judgment, the court is not required to simply accept Plaintiff's factual assertions, but should do so "only if there is a genuine dispute to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

## ARGUMENT AND CITATION TO AUTHORITY

I.   **Sheriff Jackson, in his Official Capacity, is entitled to Eleventh Amendment Immunity from Plaintiffs' 42 U.S.C. § 1983 Claims.**

Defendant, in his official capacity, as Sheriff of Fulton County, Georgia, acts an "arm of the State" of Georgia, in establishing a random drug testing policy for sworn and civilian employees of the Fulton County Sheriff's Office and/or Fulton County Jail and, as such, is entitled to Eleventh Amendment Immunity from Plaintiffs' Section 1983 claims. The Eleventh Amendment provides that:

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

6

U.S. Const. amend. XI. "It is firmly established that the Eleventh Amendment immunizes unconsenting states from private suits in federal courts for retrospective money damages, whether brought by their own citizens or by citizens of other states." Ostroff, 554 F. Supp. at 355 (citing Hans v. Louisiana, 134 U.S. 1, 1, 10 S. Ct. 504, 33 L.Ed. 842 (1890); Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974)). A state's Eleventh Amendment immunity also extends to statewide agencies. Id. (citing Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Assoc., 450 U.S. 147, 101 S. Ct. 1032, 67 L.Ed.2d 132 (1981) (holding that an agency of state government is part of the state for Eleventh Amendment purposes)).

Furthermore, it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when ... an 'arm of the State' is sued." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir.2003) (citing Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977)).

A court faced with a claim of Eleventh Amendment immunity must first determine whether the plaintiff is suing the state. This often involves deciding whether the entity raising the defense can be considered an "agency or instrumentality" of the state. State law guides this determination. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S. Ct.

7

568, 50 L.Ed.2d 471 (1977); Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. 1981).

The Eleventh Circuit has determined that a Georgia sheriff is an "arm of the state" when exercising his power to hire and fire his deputies and therefore "enjoys Eleventh Amendment immunity against [a plaintiff's] wrongful termination claims brought against him in his official capacity under . . . the ADA." Pellitteri v. Prine, No. 13-14297, 2015 WL 151112, at *1- *5 (11th Cir. Jan. 13, 2015)). In Pellitteri v. Prine, a former deputy sheriff in the Lowndes County, Georgia Sheriff's Office filed a complaint in federal district court alleging violations of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and the ADA by Lowndes County, the Lowndes County Sheriff's Office and Lowndes County Sheriff Prine, acting in his individual and official capacities. Pellitteri, 2015 WL 151112, at *1. Sheriff Prine then filed a motion to dismiss in which he argued that plaintiff's § 1983 and ADA claims against him in his official capacity were barred by the Eleventh Amendment. The District Court denied Sheriff Prine's motion to dismiss, and Sheriff Prine appealed. Pellitteri, 2015 WL 151112, at *1.

In reversing the District Court's decision, the Eleventh Circuit explained:

8

In making the "arm of the State" determination,
we weigh the four factors set forth in Manders
[v. Lee]: "(1) how state law defines the entity;
(2) what degree of control the State maintains
over the entity; (3) where the entity derives its
funds; and (4) who is responsible for judgments
against the entity."   Id. at 1309.  . . . The
first Manders factor — how state law defines the
entity — points to viewing the Sheriff's Office
as an "arm of the State."  . . . [T]he "essential
governmental nature" of each sheriff's office in
Georgia is to (1) "enforce the law and preserve
the peace on behalf of the sovereign State" and
(2)  "to  perform  specific  statutory  duties,
directly  assigned  by  the  State,  in  law
enforcement,  in  state  courts,  and  in
corrections." . . . T]he authority of sheriffs to
employ personnel is . . . derived from the State.
The Georgia legislature has enacted laws giving
sheriffs alone the power to hire their deputies,
independent  of  any  influence  from  county
governments. See O.C.G.A. § 15-16-23. Deputies
are also considered employees of the sheriff and
not the County.  Warren v. Walton, 231 Ga. 495,
202 S.E.2d 405, 409 (Ga. 1973) (recognizing that
"deputy sheriffs and deputy jailors are employees
of the sheriff, whom the sheriffs alone are
entitled to appoint or discharge") (quotation
marks omitted); Brown v. Jackson, 221 Ga. App.
200, 470 S.E.2d 786, 787 (Ga. Ct. App. 1996)
(noting that deputy sheriffs "were employees of
the sheriff and not Peach County"). . . The second
Manders factor is based on the "degree of control
the State maintains over the entity." . . . [W]e
conclude that the State of Georgia exercises
substantial control over a sheriff's personnel
decisions, especially in the hiring and firing of
deputies. . . The third factor in the Eleventh
Amendment analysis is where the entity derives
its funds. . . [I]t is the State that mandates
that counties set a budget for the sheriff's
office. Id. (citing O.C.G.A. §§ 36-9-5, 42-5-
2(a), 15-16-20, 45-4-7). More important, although
each  county  sets  the  total  budget  for  the

> sheriff's office, it cannot dictate how the
> sheriff spends those funds.

Pellitteri, 2015 WL 151112, at *1 -*4. Reasoning that the first, second and third Manders factors weighed in favor of immunity, the Eleventh Circuit concluded that the plaintiff's Section 1983 and ADA claims against Sheriff Prine were barred by the Eleventh Amendment.

Undoubtedly, the Eleventh Circuit's analysis in Pellitteri applies with equal force to the Section 1983 claims against Sheriff Jackson in the present case and, compels a finding that Sheriff Jackson is an "arm of the state" when exercising his power to establish and implement a random drug testing policy for sworn and civilian employees in order to prevent the use of illegal drugs by such employees. (Jackson Aff.,¶ 5). In particular, Georgia law requires that public officers and employees that work in high-risk jobs are subject to random testing for use of illegal drugs. See O.C.G.A. § 45-20-91(a). Furthermore, O.C.G.A. § 45-20-91(b) authorizes:

> "the head of each state agency, department, commission,
> board, bureau, or authority, in conjunction with DOAS,
> shall determine those positions and groups whose occupants
> regularly perform high-risk work where inattention to duty
> or errors in judgment while on duty will have the potential
> for significant risk of harm to the employee, other
> employees, or the general public."

Pursuant to O.C.G.A. § 45-20-91(a)(b), Defendant as the duly elected Sheriff of Fulton County has the authority to require random drug testing for employees who work in high-risk jobs and, the authority and discretion to classify those job positions as high risk. In Mayo v. Fulton County, 220 Ga. App. 825, 470 S.E.2d 258 (1996), the Court of Appeals held that the Sheriff has the "authority to promulgate random drug testing program for employees authorized to carry weapons; to fulfil her duties as elected, constitutional officer, sheriff had inherent authority to implement public safety policies, including random drug screening…." In this case, the Fulton County Sheriff's Office random drug testing policy provides that if a sworn or civilian employee is found to have used an illegal drug or refuses to be tested may be disciplined up to and/or including termination. (Adger Aff., ¶ 6); (Jackson Aff.,¶ 5). Therefore, a Sheriff Jackson's authority to fire employees for using illegal drugs is derived from the state. In this case, the Sheriff is functioning as an "arm of the state" and, Eleventh Amendment immunity applies to deprive this court of jurisdiction over Plaintiffs' claims brought against Sheriff Jackson under Section 1983.

## II.   Sheriff Jackson in his Official Capacity is not a Person within the meaning of Section 1983.

Sheriff Jackson in his official capacity is not a "person" within the meaning of Section 1983. In <u>Molette v. Georgia</u>, 469 Fed.Appx 768 (11th Cir. 2012), the Eleventh Circuit held "[t]o prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a *person* acting under color of state law." <u>Griffin v. City of Opa-Locka</u>, *261 F.3d 1295, 1303 (11th Cir.2001)*. But the United States Supreme Court has concluded that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." <u>*Will v. Mich. Dep't of State Police,*</u> 491 U.S. 58, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Therefore, Plaintiffs' Section 1983 claims against Sheriff Jackson, in his official capacity, should be dismissed as a matter of law.

## III.  Plaintiffs Cannot Prove their § 1983 Claims Against Sheriff Jackson Based on the Theory of Supervisory Liability.

The Complaint seeks to hold Sheriff Jackson liable for his alleged conduct as a supervisor or department head. To impose supervisory liability, there must be a causal connection between the conduct of the supervisory official and the alleged constitutional violation. <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396-97 (11th Cir. 1994). Furthermore, to show that a

12

supervisor is liable in his individual capacity for the actions of subordinate, a plaintiff must demonstrate either: (1) a history of widespread abuse "putting the responsible supervisor on notice of the need to correct the alleged deprivation"; or (2) a supervisor's custom or policy resulting in deliberate indifference to constitutional rights; or (3) facts supporting an inference "that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Dalrymple v. Reno, 334 F.3d. 991, 995-996 (11th Cir. 2003). This standard is "extremely rigorous." Id. (quoting Braddy v. Florida Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1994)). See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). The premise of a supervisory liability claim is that a supervisor's subordinate has inflicted a constitutional violation, but the supervisor either personally participated in injury or there is an affirmative "causal link" between the supervisor's conduct and the subordinate's infliction of the constitutional injury. See Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007).

Plaintiffs completely fail to allege any widespread abuse that would have placed Sheriff Jackson on notice to correct any harm caused by a subordinate. (Jackson Aff., ¶ 14). Further, Plaintiffs has not even alleged that Sheriff Jackson was on

notice that any action relevant to the harm alleged needed to be taken. To constitute sufficient notice, the past widespread abuses "must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

In addition to being able to satisfy the first prong, Plaintiffs have not alleged facts that show a custom or policy that caused deliberate indifference to their constitutional rights. The record is completely devoid of facts supporting the alleged conclusion that there was a custom or policy that amounted to a deliberate indifference to Plaintiffs' constitutional rights.

Finally, Plaintiffs have not alleged that Sheriff Jackson either directed his subordinates to act unlawfully, or knew they would act unlawfully, and failed to stop them from doing so. As the record is void of any facts tending to support such an allegation, Sheriff Jackson cannot be held liable under a theory of supervisory liability. Therefore, all § 1983 claims against Sheriff Jackson should be dismissed as a matter of law.

**IV.  Random Drug Testing of sworn and civilian employees who work in the Fulton County Jail to prevent illegal drug use constitutes a compelling state interest for jail security and safety which outweighs the Plaintiffs' Privacy Expectations.**

Random drug testing of sworn and civilian employees, who work in the Fulton County Jail, in order to prevent illegal drug use, constitutes a compelling state interest, which outweigh the Plaintiffs' privacy expectation. The U.S. Supreme Court has enunciated that random blood, urine, and breath drug tests administered by a governmental employer fall within the ambit of a search under the Fourth Amendment to the U.S. Constitution. Skinner v. Railway Labor Executives' Association, 489 U.S. 602 (1989), 109 S.Ct. 1402 (1989). Although the Fourth Amendment is applicable to drug and alcohol testing, the Court in Skinner restated a longstanding general rule that the "Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." As such, the Court in Skinner, held that random drug and alcohol testing mandated by the Federal Railroad Administration was reasonable under the Fourth Amendment. The Court in Skinner held that the government had a compelling interest in regulating the conduct of railroad employees engaged in safety-sensitive tasks in order to ensure the safety of the traveling public, which outweighed the employees privacy concern. Furthermore, the Court opined that government's

15

compelling interests presented "special needs" beyond normal law enforcement that justifies departure from the usual warrant and probable cause requirements.

Additionally, the U.S. Supreme Court in <u>National Treasury Employees Union v. Von Raab</u>, 489 U.S. 656, 109 S.Ct. 1384 (1989), held that the government has a compelling interests in assuring that drug interdiction agents be drug free, uncorrupted, and physically and mentally fit for their jobs and, "that these governmental interests outweigh the privacy interests of those seeking promotion to such positions, who have a [diminished] expectation of privacy in respect to the intrusions occasioned by a urine test by virtue of the special, and obvious, physical and ethical demands of the positions."

Moreover, the Eleventh Circuit in <u>American Federation of State, County and Municipal Employees Council v. Scott</u>, 717 F.3d 851 (11th Cir. 2013), held "…in determining whether policy requiring employees to undergo drug testing violates Fourth Amendment is job-category-by-category balancing of an individual's privacy expectation against the government's interests, with other relevant factors being character of intrusion, particularly whether collection affords [a] modicum of privacy and efficacy to testing regime." Additionally, the Court in <u>American Federation</u> held that "government employees

16

engaged in safety-sensitive tasks, particularly those involved
with operation of heavy machinery or means of mass transit may
be subject to suspicionless drug testing under the Fourth
Amendment."

The Georgia Supreme Court applied the Fourth Amendment
balancing analysis for random drug testing in the Department of
Corrections v. Colbert, 260 Ga. 255, 391 S.E.2d 759 (1990). In
Colbert, a prison adopted a policy for random drug screening of
all employees and, subsequently the prison's fire chief tested
positive for marijuana during a random drug test. The Colbert
Court held that the state had a compelling interest in ensuring
that all persons in the employ of prisons are of uncompromising
integrity because of their potential access to prisoners, and
that the random drug testing policy applicable to all prison
employees was not unconstitutionally overbroad.

Furthermore, the Georgia Court of Appeals held that the
Fulton County Sheriff was authorized to promulgate and implement
a drug testing policy for his employees. Mayo v. Fulton County,
220 Ga. App. 825, 470 S.E.2d 258 (1996). Moreover, the Court in
Mayo held that the Sheriff "had a compelling reason for randomly
testing these employees because of drug use by them undermines
public confidence in the integrity of the Sheriffs' office and

17

poses a danger to fellow employees, inmates and the public at large."

In the case at bar, Fulton County Sheriff's Office has a compelling interest in preventing illegal drug use by sworn and civilian employees who work in the FCJ and that have regular contact with inmates.(Adger Aff., ¶ 6). Fulton Sheriff's Office has a compelling interest to ensure that sworn and civilian employees who work in the FCJ have uncompromising integrity. (Adger Aff., ¶ 7). A sworn or civilian employee that's been compromised by illegal drug use may be extorted to smuggle various kinds of contraband into the FCJ. (Adger Aff., ¶ 8). As such, Fulton County Sheriff's Office must have the ability to conduct random drug testing of sworn and civilian employees as a counter-measure to such security breaches. (Adger Aff., ¶ 8). Therefore, the Fulton County Sheriff's compelling interest in preventing illegal drug use and maintaining security outweighs Plaintiffs' privacy expectation.

Furthermore, Plaintiffs' allegation that the female monitors of the Fulton County Sheriff's Office allegedly watched or observe them urinate does not rise to an unreasonable search under the Fourth Amendment. (Compl. ¶¶ 31,49,59,66,76,88,95,& 105). The Eighth Circuit addressed the same issue at bar in Booker v. City of St. Louis, 309 F.3d 464 (8th Cir. 2002). In

18

Booker, a male municipal correctional officer ("Officer") tested positive for marijuana during a random drug test and was fired from his job. The Officer alleged that the random drug test was unreasonable because the female monitor "stood at his shoulder and was close enough (approximately a foot away) so that she could observe [his] genitals which embarrassed him."

The Court in Booker held that the "City has a compelling interest in assuring that the activities of employees who come into daily contact with inmates are not [hindered] by drugs and are fully capable of performing their duties, and that, as a correctional officer in a medium security institution, he had a diminished expectation of privacy." The Court further held in Booker that although the female monitor stood a foot behind the Officer the manner of collection was not so intrusive to constitute an unreasonable search…and even if the monitor was able to observe his genitals, as he provided the sample, any such observation would have been fleeting.

Here, the Plaintiffs were tested by female monitors. Plaintiffs provided their samples in partitioned bathroom stalls. The female monitors stood outside the bathroom stalls to insure the integrity of the urine samples but did not watch Plaintiffs urinate and/or observe their genitals. See (Dixon Dep. 36:8-25; 46:1-25; 47:2-6); (Murray Dep. 42:13-25; 43:1-12;

44:1-25; 45:1-14); (Spoon Dep. 35:14-25; 36:1-19). Plaintiffs were provided more than a modicum of privacy during the August 7, 2012 random drug testing. See American Federation of State, County and Municipal Employees Council v. Scott, 717 F.3d 851 (11th Cir.). Assuming arguendo, even if a female monitor observed one of Plaintiffs urinating, it would have only been a fleeting glance. Nevertheless, the Fulton County Sheriff's Office compelling interest in preventing illegal drug use among sworn and civilian employees outweigh the Plaintiffs' privacy expectation and, as such, random drug testing of Plaintiffs was not unreasonable under the Fourth Amendment. Therefore, Plaintiffs' Section 1983 claims should be dismissed as a matter of law.

**V.     Sheriff Jackson is entitled to Summary Judgment As To Plaintiffs Gender Discrimination Claims as a Matter of Law.**

In Counts One and Two of their Complaint, Plaintiffs' allege that they were subjected to gender discrimination under Title VII. (Complaint ¶¶ 111, 113-115). Plaintiffs' claims of gender discrimination should be dismissed as a matter of law because Plaintiffs cannot establish a prima facie case of gender discrimination.

An employer is prohibited from "discriminating against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Plaintiffs has presented no direct evidence of gender discrimination, their gender claims under Title VII must be analyzed with the aid of circumstantial evidence. For claims based on circumstantial evidence, the burden-shifting framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), is used. Under this framework, Plaintiffs must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Holified v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

To establish a prima facie case of gender discrimination, Plaintiffs must show that (1) she is a member of a protected class; (2) she was qualified for the job, (3) she suffered an adverse employment action, and (4) that a member outside of her protected class was treated more favorably. Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 842-43 (11th Cir.2000). In the case at bar, Plaintiffs' allegation that one was required to under a visual drug test is not a factor in establishing a prima facie case of gender discrimination.

If Plaintiffs are able to establish a prima facie case, the burden then shifts to Defendant to show that its actions were taken for a legitimate, non-discriminatory reason. Texas

Dep't. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Holified, 115 F.3d at 1564.  "[T]he defendant must merely proffer non-[discriminatory] based reasons, not prove them." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994).

Once a defendant meets the burden of proffering its legitimate, non-discriminatory reason, erasing the inference of discrimination, Plaintiffs must then show that the defendant's proffered reason is really a pretext for unlawful discrimination.  Burdine, 450 U.S. at 255-56; Holified, 115 F.3d at 1565.  However, a reason is not pretext for discrimination "unless it is shown that the reason was false, and that discrimination was the real reason."  St Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).  The ultimate burden of persuasion of intentional discrimination, however, remains at all times with the Plaintiffs.  See Burdine, 450 U.S. at 253.

There is no evidence that Plaintiffs were subjected to an adverse employment action or that someone outside of Plaintiffs' protected class was treated more favorably.  Thus, Plaintiffs' cannot establish a claim of gender discrimination and their claims must fail as a matter of law.

CONCLUSION

For the aforementioned reasons, Defendant is entitled to summary judgment as a matter of law.

Respectfully submitted, this 31st day of August, 2015.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

Kaye Woodard Burwell
Georgia Bar No. 775060
Kaye.Burwell@fultoncountyga.gov

Steven Rosenberg
Georgia Bar No. 614560
Steven.Rosenberg@fultoncountyga.gov


/s/ Terry Grandison
Terry Grandison
Staff Attorney
Georgia Bar No. 305205
Terry.Grandison@fultoncountyga.gov

***Attorneys for Defendants***


141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (Office)
(404) 730-6324 (Facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER STEPHENS, FAYTH BOND,  :
RITA GETTIS, KRISTI MAYO,       :
DEONICA JONES, BELINDA ZACHARY, :
And TRACEY GENERAL              :
                                : CIVIL ACTION FILE NO.:
        Plaintiffs,             :
                                : 1:13-CV-01528-RWS-GGB
        v.                      :
                                :
FULTON COUNTY, SHERIFF THEODORE :
JACKSON, in his Official        :
Capacity as the Fulton County   :
Sheriff.                        :
                                :
        Defendant.              :
                                :

_____

## CERTIFICATE OF FONT TYPE, SIZE AND SERVICE

THIS IS TO CERTIFY that on this day, the undersigned presented this document in Courier New, 12 point type in accordance with L.R. 5.1(C) and electronically filed the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 31st day of August, 2015.

/s/ Terry Grandison
Terry Grandison
Staff Attorney
Georgia Bar No. 305205
Terry.Grandison@fultoncountyga.gov

24