# Exhibit "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER STEPHENS, FAYTH BOND,
RITA GETTIS, KRISTI MAYO,
DEONICA JONES, BELINDA ZACHARY,
and TRACEY GENERAL

           Plaintiffs,

v.

SHERIFF THEODORE JACKSON, in
his Official capacity as the Fulton County
Sheriff

           Defendant.

Civil Action File No.:
1:13-CV-01528-RWS-GGB

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THEIR COMPLAINT WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION

## AND

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COME NOW, Plaintiffs Jennifer Stephens, Fayth Bond, Rita Gettis, Kristi Mayo, Deonica Jones, Belinda Zachary, and Tracey General, Plaintiffs herein, by and through their undersigned counsel, and file their Memorandum In Support of Motion to Dismiss Their Complaint Without Prejudice and In Opposition to

Defendant's Motion For Summary Judgment filed on May 6, 2015. This Motion requests that their Complaint be dismissed **without prejudice** for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 41(a)(2). This Motion to Dismiss **without prejudice** must be filed at this time by the Plaintiffs due to the inescapable conclusion that this court lacks subject matter jurisdiction to reach or decide the merits of this claim or to issue a ruling on the Defendant's Motion for Summary Judgment. This Motion to Dismiss **without prejudice** is also being filed by the Plaintiffs as the only legally appropriate Response to the Defendant's Motion for Summary Judgment and Plaintiffs ask this Court to accept this Motion to Dismiss as their response thereto with the result being the Denial of the Defendant's Motion for Summary Judgment and the Grant of their Motion to Dismiss Without Prejudice.

In this claim, following the filing of the Defendant's Motion for Summary Judgment, and in preparation for their response thereto, on October 5, 2015, the Plaintiffs' previously filed of record the original depositions of the Defendant's agents, employees, or Rule 30(b)(6) representatives, Pamela Murray, Patricia Dixon, Frankie Brown, and Donna Yvette Broughton. Contemporaneously herewith, out of an abundance of legal caution, Plaintiffs are also filing 1) Plaintiff's Notice of Filing of Deposition Page Excerpts of Fayth Bond, Jennifer

Stephens, Rita Gettis, Kristi Mayo, Deonica Jones, Belinda Zachary, and Tracey General, 2) Plaintiffs' Statement of Separate And Additional Material Facts and Statement of Facts Disputing Defendant's Statement of Undisputed Facts, and 3) Plaintiffs' Response to the Defendant's Statement of Material Facts. For the reasons stated below, this Court should grant the Plaintiff's Motion to Dismiss without prejudice and deny the Defendant's Motion for Summary Judgment.

## I.     Introduction and Summary of Facts

Plaintiffs filed their Complaint on May 6, 2013. That Complaint stated, inter alia, that Defendant violated their Title VII statutory rights and their 42 U.S.C. § 1983 fourteenth amendment rights to be free from discrimination and 42 U.S.C. § 1983 fourth amendment rights to be free from unreasonable search and seizure. Specifically, this case involves the violation of the Plaintiff's 4th Amendment and 14th Amendment privacy rights due to having been subjected to a degrading, demeaning, and unconstitutional random "observed" drug test conducted by the Defendant and his agents and employees.

On August 7, 2012, Jennifer Stephens, Fayth Bond, Rita Gettis, Kristi Mayo, Deonica Jones, Belinda Zachary, and Tracey General, among others, were required to undergo a random drug test as part of their employment with the Fulton County Sheriff, Defendant herein. Each of these Plaintiffs was treated in a crude,

3

demeaning, and unconstitutional manner by being required to perform the excretory function of urinating in a specimen cup in plain view of observers from the Sheriff's Office of Professional Standards. These observers entered the bathroom stalls with the Plaintiff's, required that they expose their vaginas and pubic areas to them, (and other random persons), while they urinated in the specimen cups, purportedly to perform a random urine drug testing on that date.

Fayth Bond testified that she was instructed by the OPS officer administering the urine test to fill the cup and Ms. Bond replied in the affirmative. While in the stall, Ms. Bond turned around to close the door and the OPS officer stepped into the stall, would not allow her to close the door, and stated that she was going to stand right there in front of Ms. Bond while she gave a urine sample. (Deposition of Fayth Bond p. 58 lines 4-11) The door to the stall in which Ms. Bond was urinating remained open and the officer administering the test was standing in front of the door so the door could not close. (Deposition of Fayth Bond p. 59 lines 7-22) The officer stood directly in front of her watching her urinate the entire time. (Deposition of Fayth Bond p. 60 lines 1-12)

Deonica Jones testified that she went into the restroom and as she entered the stall and turned around to close the door the officer from OPS was behind her and Ms. Jones asked her to wait outside while she was trying to close the door but

the officer pushed the door back open and said no I have to be inside with you to observe this testing. (Deposition of Deonica Jones p. 102 lines 16-20) Ms. Jones advised the officer that she was on her menstrual cycle that day and that she did not feel comfortable and the officer told her that she had to give the urine sample even though she was on her menstrual cycle that day. (Deposition of Deonica Jones p. 103 lines 23-25) Ms. Jones went ahead and gave the urine sample because she did not want to lose her job by refusing to give the urine sample. (Deposition of Deonica Jones p. 103 line 23 through p. 104 line 2)

Tracey General testified that when she walked into the bathroom with the three stalls, she saw another employee Belinda Zackary in a stall with the door open with her pants down and anybody could just look at her. (Deposition of Tracey General Trawick p. 81 lines 3-19) Tracey General Trawick actually saw Ms. Zackary's pants down, she saw her legs and she saw Ms. Zackary's vagina. (Deposition of Tracey General Trawick p. 85 lines 3-11) Ms. Trawick, as she was walking through the bathroom, actually saw more than one female employee while those female employees were undressed and giving urine samples but she did not personally know any of the other females other than Belinda Zackary. (Deposition of Tracey General Trawick p. 86 lines 1-25) When Ms. Trawick was walking through the bathroom to go to the stall to give the urine sample, there was urine on

5

the floor and there was urine all over the place, and it was pretty much everywhere. (Deposition of Tracey General Trawick p. 87 lines 2-16)

When she walked into the stall and the testing officer walked in behind her, she told the officer that she was on her cycle and that she did not know that the testing officer had to actually watch her urinate. (Deposition of Tracey General Trawick p. 92 line 16 through p. 93 line 1) While Ms. Trawick was giving her urine sample the OPS officers eyes remained focused on her vagina which caused her to feel humiliated, stressed and really uncomfortable. (Deposition of Tracey General Trawick p. 97 lines 5-18)

Belinda Zachary testified that she was taken into the bathroom and when she arrived she saw one of her co-workers in a stall with the door wide open squatting to use the cup to give a urine sample. (Deposition of Belinda Zackary p. 37 lines 3-8) The employee that she saw in the stall with the door open with her legs wide open urinating in a cup was Jennifer Stephens. (Deposition of Belinda Zackary p. 38 lines 12-18) After being instructed to go into the stall and urinate into the cup, Ms. Zackary saw another employee walk by her stall and look directly at her and saw her exposed vagina and private parts. The employee that walked by her was Deputy Mayo. (Deposition of Belinda Zackary p. 39 lines 10-22)

Rita Gettis testified that as she was walking back to the stall to use the bathroom Lieutenant Dixon advised her that she, Lieutenant Dixon, would have to watch Ms. Gettis urinate. (Deposition of Rita Gettis p. 126 lines 17-24) When Ms. Gettis gave the urine sample, Lieutenant Dixon did in fact watch her urinate. (Deposition of Rita Gettis p. 127 line 1)

Jennifer Stephens testified that when she went into the bathroom to give the urine sample, the bathroom was hot, the toilets had not been flushed, there was urine droplets on the seat and there was paper towels on the floor. (Deposition of Jennifer Stephens p. 156 lines 6 through p. 157 line 17) When she went to close the door to the stall, the OPS Shaleka Spoon, told her that she could not close the door. (Deposition of Jennifer Stephens p. 158 lines 16-21) While she was in the stall with the door open, other females walked past and because it was shift change, several people were coming and going in the bathroom while she was in the stall. (Deposition of Jennifer Stephens p. 158 line 16 through p. 159 line 4) Security Specialist Spoon was looking directly at her private parts and observed her pubic area. (Deposition of Jennifer Stephens p. 170 lines 18-20) After sitting in the cafeteria for a while drinking the water and orange juice and becoming lightheaded and dizzy, Ms. Stephens vomited. (Deposition of Jennifer Stephens p. 192 lines 3-24)

7

Kristi Mayo testified that when she went to give the urine specimen, she was accompanied by Pamela Murry.  (Deposition of Kristi Mayo p. 70 lines 10-23) When she walked into the bathroom, she saw Ms. Belinda Zackary attempting to give a urine sample in a stall, and Ms. Zackary was bent over squatting and exposed and Ms. Mayo was shocked.  (Deposition of Kristi Mayo p.71 lines 6-16) When she gave the urine sample, she was not expecting her menstrual cycle to be over, and she was trying to hold her pants while squatting over because she did not want them on the floor and the OPS Officer was watching her while other people were walking in and out of the bathroom and washing their hands. (Deposition of Kristi Mayo p. 76 lines 4-14) Being watched in the manner that she was watched during the random drug test on August 7, 2012 made Ms. Mayo feel humiliated and she did not want the observer to see her panties and her vagina, and, other people that were walking in could observe her in that position.  (Deposition of Kristi Mayo p. 77 line 16 through p. 78 line 12)

The Defendant's Rule 30(b)(6) witness, Mr. Frankie Brown, testified that the Sheriff's Department understands that obtaining a urine test or urine specimen involves an excretory function. (Deposition of Lieutenant Frankie Brown p. 41 lines 14-18) The Sheriff's Department is also aware that in conducting random drug tests, the employees of the department being subject to the random drug test

have certain privacy rights. (Deposition of Lieutenant Frankie Brown p. 43 lines 7-13) He further testified that in properly conducting a random drug test, proper procedure requires that the bathroom facility where the testing is being done has been pre-cleaned prior to entering the bathroom, the person being tested would be away from a location where other people would be, and the location would be cordoned off so that other people that needed to use those facilities would not have access to it. (Deposition of Lieutenant Frankie Brown p. 52 line 13 through p. 53 line 4) He further testified that in 2012, the Policy and Procedure with regard to obtaining a urine specimen from female employees required that the tester must be located outside the door, in front of the testee and facing sideways to be able to maintain peripheral contact with the testee and provide privacy and the tester must not hold the door with her body and the tester would not enter the stall. (Deposition of Lieutenant Frankie Brown p. 56 lines 2-13 and additionally p. 57 line 16 through p. 58 line 20)

On the same day that the female random drug testing was performed on August 7, 2012, the male employees of the Fulton County Sheriff's Department were tested in an observed testing scenario also. (Deposition of Lieutenant Frankie Brown p. 152 line 6 through p. 153 line 20) Mr. Brown stated that on the same day that the female random drug testing was performed on August 7, 2012, the male

employees of the Fulton County Sheriff's Department were tested in an observed

testing scenario also.  (Deposition of Lieutenant Frankie Brown p. 152 line 6

through p. 153 line 20) When the male employees of the Fulton County Sheriff's

Department were tested on August 7, 2012, no male employee providing a urine

specimen was required to allow their penis to be stared out while they urinated into

a cup, and, no male employee was required to have their genitalia stared at while

the urine flowed from their penis into the cup.  (Deposition of Lieutenant Frankie

Brown p.  153 line 21 through p. 154 line 11) During the random drug testing for

men, even with an observed test, the employee would go into the stall, the tester

would stand outside the stall, and the tester would emerge with the cup and the

specimen would be placed in a vial.  (Deposition of Lieutenant Frankie Brown p.

154 line 14 through p. 155 line 3) In no instance would a male employee be

required to expose his private parts or his penis to the OPS officer conducting the

testing in any scenario for providing a urine specimen.  (Deposition of Lieutenant

Frankie Brown p. 158 line 21 through p. 159 line 21)

In response to Plaintiff's initial Complaint, Defendant filed a Motion to

Dismiss on July 8, 2013. Defendant's Motion to Dismiss was denied in part and

granted in part. On December 23, 2013 and May 7, 2014, respectively, Defendant

filed his Answer and Amended Answer. After completing discovery, Defendant

filed his Motion for Summary Judgment. His Motion argues, inter alia, that Defendant is immune from Plaintiffs' 42 USC § 1983 claims in federal court under the Eleventh Amendment. In that Motion the defendant has argued that 1) Sheriff Jackson in his official capacity is entitled to 11th Amendment Immunity, 2) Sheriff Jackson in his official capacity is not a person within the meaning  of Section 1983, 3) Plaintiff's cannot prove their section 1983 claims against Sheriff Jackson based upon the theory of supervisory liability, 4) random drug testing of sworn and civilian employees who work  in the Fulton County jail to prevent illegal drug use constitutes a compelling state interest for jail security and safety which outweighs the plaintiff's privacy expectations, and 5) Sheriff Jackson is entitled to Summary judgment as to Plaintiff's gender discrimination claims as a matter of law.

With regard to those sections of Defendant's Motion relating to section 1983 and the 11th Amendment immunity of the Sheriff, those arguments are founded upon the jurisdictional limits of Article III Federal Courts to render Judgments against States or their actors. After a comprehensive review of the applicable law in this circuit and others, Plaintiffs now must concede that this Court does not have subject matter jurisdiction to decide the merits of Plaintiffs' § 1983 claims, or to issue any orders on the merits regarding Plaintiffs' Complaint because the 11th Circuit has clearly and repeatedly determined that in Georgia, a Sheriff is a State

11

actor and is immune from suit **in this Court**. These rulings do not stand for the proposition that a Sheriff under the facts of this case, and in many other circumstances, are not liable  to Plaintiffs for violating their constitutional rights; rather, these ruling stand only for the proposition that this Court is not the appropriate court to render a judgment on the merits regarding the liability of the Defendant. Thus Plaintiffs now request that this Court Deny Defendant's Motion for Summary Judgment, (inasmuch as a contrary ruling would be an improper ruling on the merits), and, further request that this Court Dismiss Plaintiff's Complaint in its entirety, and specifically the § 1983 claims, without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

## II.    Legal Standard

"The district court enjoys broad discretion in determining whether to allow a voluntary dismissal under *Rule 41(a)(2)*." *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001)(Citation omitted.) "Once an answer or a summary judgment motion has been filed, *Rule 41(a)(2)* permits a plaintiff to dismiss voluntarily an action only 'upon order of the court and upon such terms and conditions as the court deems proper.' *Fed. R.Civ.P. 41(a)(2)*. Such a voluntary dismissal upon order of the court is also deemed without prejudice unless otherwise specified by the court." *Id.*

III.    **Argument**

A. Plaintiff's Motion To Dismiss Without Prejudice Must Be Granted As
Defendant Will Not Be Prejudiced

"'In most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit,* as a result.' 'The crucial question to be determined is, would the defendant lose any substantial right by the dismissal.'" *Id.* (Internal citations omitted)(Emphasis in original). *See also Global Aerospace, Inc. v. Platinum Jet Management, LLC,* 2011 U.S. Dist. LEXIS 41032 (2011) ("'[I]n most cases a dismissal should be granted unless the defendant will suffer clear legal prejudice, other than the mere prospect of a subsequent lawsuit, as a result.'")(citing *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 857 (11th Cir. 1986)); *Paul v. Ga. Southern & Fla. Ry. Co.,* No. 5:09-CV-296, 2010 U.S. Dist. LEXIS 117580, *1 - *2 (M.D. Ga. 2010) "'In most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, other than the mere prospect of a subsequent lawsuit, as a result.'" (citing *Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1255 (11th Cir. 2001)).

In the instant case, Plaintiffs' Motion to Dismiss without prejudice should be granted as Defendant will not suffer any clear legal prejudice. While the instant case has reached the summary judgment stage of litigation, dismissal is still

warranted. The Eleventh Circuit has routinely held that the fact that the litigation

has proceeded to the summary judgment stage does not establish plain legal

prejudice requiring the denial of a motion to dismiss. *Pontenberg,* 252 F. 3d at

1256. In fact, in *Pontenberg* the Defendant argued "that a dismissal without

prejudice was inappropriate at this juncture in the litigation because it had invested

considerable resources, financial and otherwise, in defending the action, including

by preparing the then pending summary judgment motion." *Id.* Despite this

argument the Court of Appeals for the Eleventh Circuit held that "the district court

did not abuse its broad discretion in allowing [Plaintiff] to dismiss voluntarily her

action against [Defendant] without prejudice under *Rule 41(a)(2)*" *Id.*

Moreover, in *Paul*, the Defendant argued that the case could not be

dismissed without prejudice because Plaintiff failed to prosecute the case and

caused Defendant to incur considerable time and expense. (No such argument can

be advanced in this claim as to the prosecution of this claim by the Plaintiffs).

However the District Court for the Middle District of Georgia disagreed, stating,

"[w]hile the Court has problems with the way Plaintiffs have proceeded in this

case, unfortunately the Court is *required* to dismiss the case without prejudice. The

Eleventh Circuit has held that '[n]either the fact that the litigation has proceeded to

the summary judgment stage nor the fact that the plaintiff's attorney has not been

14

prosecuting the case, alone or together, conclusively or per se establishes plain legal prejudice requiring the denial of a motion to dismiss.'" *Paul*, 2010 U.S. Dist. LEXIS at *3. (Emphasis added).

At times the Eleventh Circuit has conditioned the grant of a motion to dismiss without prejudice on the payment of any reasonable costs incurred by Defendant before Plaintiff can re-file her case. *Pontenberg,* 252 F. 3d at 1260. The Eleventh Circuit Court of Appeals stated, "[t]his is particularly true where, as here, the district court has conditioned the dismissal on the payment of costs to the defendant should the plaintiff later refile. Where the 'practical prejudice' of expenses incurred in defending the action can be 'alleviated by the imposition of costs or other conditions,' the district court does not abuse its 'broad equitable discretion' by dismissing the action without prejudice."

In this case, the imposition of costs in conjunction with the grant of the dismissal without prejudice would be inappropriate. All of the discovery and depositions that have been obtained in this case will be utilized in the subsequent case by both parties once this claim is refiled.  Thus no costs will be incurred by either party that have not already been necessarily and appropriately incurred in this claim. In the instant case, Plaintiffs do not foresee any additional costs to the Defendant or Plaintiff should Plaintiffs choose to re-file their case as no additional

discovery would be necessary. In fact, in *Paul*, the Court ordered "that all of the discovery that has been completed in the case now pending before this Court will be available for use in any future action filed by Plaintiffs, regardless of what court the action is filed in." *Paul*, 2010 U.S. Dist. LEXIS at *4. A similar order should be entered in this claim and is in fact the best remedy for the parties to prevent unnecessary costs in the future. Thus, for the reasons stated herein, Defendant will not be prejudiced in a dismissal of this action and Plaintiffs' Motion to Dismiss Without Prejudice should be granted.

   B. <u>Plaintiff's Motion to Dismiss Must Be Granted As This Court Lacks Subject Matter Jurisdiction</u>

   It is well settled that if a Court lacks subject matter jurisdiction, then it cannot make an adjudication on the merits of the case. The Eleventh Circuit Court of Appeals has explained:

> Accordingly, "when a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Id.* (citing *Oliver v. Trunkline Gas Co., 789 F.2d 341, 343 (5th Cir. 1986)*). Indeed, such an action unconstitutionally invades the powers reserved to the states to determine controversies in their own courts, *see Victory Carriers, 404 U.S. at 212, 92 S. Ct. at 425* (quoting *Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 703, 78 L. Ed. 1248 (1934)*), as well as "offends fundamental principles of separation of powers," *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210, 1998 U.S. LEXIS 1601*, *20 (1998). Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue. As the Supreme Court long ago held in *Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L. Ed. 264 (1868)*,

"without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id. at 514*; *see also Wernick v. Matthews, 524 F.2d 543, 545 (5th Cir. 1975)* ("We are not free to disregard the jurisdictional issue, for without jurisdiction we are powerless to consider the merits.").

*University of South Alabama v. The American Tobacco Company*, 168 F.3d 405

(11th Cir. 1999)

In the instant case, the Defendant has relied heavily on the case of *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) and *Pellitteri v. Prine*, No. 13-14297, 2015 WL 151112 (11th Cir. Jan 13, 2015) in support of the 11th Amendment argument contained in their Memorandum In Support Of Their Motion for Summary Judgment. However, both of these cases clearly demonstrate that the proper result in the instant action is to grant the dismissal requested by the Plaintiffs without prejudice.

First, *Pellitteri v. Prine*, is in fact a ruling based upon a Motion to Dismiss, not a ruling on a Motion for Summary Judgment.

"Defendant Chris Prine, the Sheriff of Lowndes County, Georgia, appeals the District Court's denial of his motion to dismiss. On appeal, Sheriff Prine argues that Plaintiff Felicia Pellitteri's wrongful termination claims are barred by the *Eleventh Amendment*. We agree. As a result, we reverse and remand for proceedings consistent with this opinion".

*Pellitteri v. Prine,* 776 F.3d 777 (11th Cir. 2015) at p. 778.  In *Pellitteri v. Prine,* Sheriff Prine filed a motion to dismiss in which he argued that both Ms. Pellitteri's

17

*β 1983* and ADA claims against him in his official capacity were barred by the *Eleventh Amendment*. The 11th Circuit determined that dismissal was appropriate on both claims.

*Manders v. Lee* is the seminal Eleventh Circuit case determining that Georgia Sheriffs are immune from suit in Federal Courts pursuant to the 11th Amendment. The Court stated:

> "The *Eleventh Amendment* provides immunity by restricting federal courts' judicial power:
>
> > The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
>
> U.S. Const. amend. XI. The *Eleventh Amendment* protects a State from being sued in federal court without the State's consent. [8] **As a result, parties with claims against a non-consenting State must resort to the State's own courts.** The *Eleventh Amendment* is "a recognition that states, though part of a union, retain attributes of sovereignty, including immunity from being compelled to appear in the courts of another sovereign against their will." *McClendon v. Georgia Dep't of Cmty. Health, 261 F.3d 1252, 1256 (11th Cir. 2001).*"

*Manders v. Lee,* 338 F. 3d at p. 1308**. (Emphasis added)**

Moreover, within the U.S.D.C. For The Northern District of Georgia, it has been determined that when the Court lacks subject matter jurisdiction, a ruling on a Motion for Summary Judgment is not proper. *Thomas v. Interland, Inc.*, No. 1:02-

CV-3175, 2003 U.S. Dist. LEXIS 27664, *4 (N.D. Ga. 2003) "[Defendant] is correct that summary judgment pursuant to *Rule 56* is not the correct procedure for dismissing based on lack of subject matter jurisdiction because 'a grant of summary judgment is a decision on the merits ... but a court must dismiss a case without ever reaching the merits if it concludes that it has no jurisdiction.' *Id.* (Citation omitted.)

In the instant case, Defendant argues that he is entitled to summary judgment on Plaintiff's Section 1983 claims because the Eleventh Amendment bars Defendant from being sued in Federal Court. In fact, Defendant himself asserts, "Eleventh Amendment immunity applies to deprive this court of jurisdiction over Plaintiffs' claims brought against Sheriff Jackson under Section 1983." (Defendant's Memorandum of Law in Support of His Motion for Summary Judgment, Pg. 11). Defendant insists, and Plaintiffs now must agree, that this Court lacks subject matter jurisdiction over Plaintiff's Section 1983 claims.

However, Plaintiff disagrees that as a result of the lack of subject matter jurisdiction, Defendant's Motion for Summary Judgment should be granted. Plaintiffs contend and precedent holds that this Court must dismiss Plaintiffs' Section 1983 claims and all claims barred by the 11th Amendment immunity applicable to the Sheriff as a state actor. As stated above a Motion for Summary

Judgment or a Dismissal with prejudice would be considered a final adjudication on the merits of this case, which is simply not permitted under established law.

Additionally, Plaintiffs request that their Title VII claims be similarly dismissed without prejudice as they are too intricately tied and related to their section 1983 constitutional claims to be tried and determined separately. Upon the Dismissal of their Complaint without prejudice, Plaintiff's will promptly refile their claims against the Defendant in a Georgia Court of competent jurisdiction, which as clearly stated in *Manders v. Lee,* is the legally appropriate forum in which the claim can be maintained to its conclusion against the Defendant. This will be accomplished pursuant to *O.C.G.A. § 9-2-61* (2015). That Georgia statute states:

§ 9-2-61. Renewal of case after dismissal

(a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of *Code Section 9-11-41*; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

(b) This Code section shall not apply to contracts for the sale of goods covered by Article 2 of Title 11.

(c) The provisions of subsection (a) of this Code section granting a privilege of renewal shall apply if an action is discontinued or dismissed without

prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state.

Thus, Plaintiffs' Motion to Dismiss their Complaint **Without Prejudice** should be Granted.   Defendant's Motion for Summary Judgment Should be Denied.

## IV.   Conclusion

For the reasons stated herein, Plaintiffs respectfully request that their Motion to Dismiss **Without Prejudice** be GRANTED and the Defendant's' Motion for Summary Judgment be Denied

Respectfully submitted this 12th day of October.

> _/s/ Marvin A. Devlin_
> Marvin A. Devlin
> Georgia Bar No. 219969
> mad@marvindevlin.com
> Juanita F. Devlin
> Georgia Bar No. 426055
> juanita@marvindevlin.com
>
> **Marvin A. Devlin, P.C.**
> 6595-G Roswell Road, Suite 765
> Atlanta, Georgia 30328
> (404) 538-6925 (office)
> (404) 537-3115 (fax)
>
> Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JENNIFER STEPHENS, FAYTH BOND, RITA GETTIS, KRISTI MAYO, DEONICA JONES, BELINDA ZACHARY, and TRACEY GENERAL | : : : : : | |
| Plaintiffs, | : : | Civil Action File No.: 1:13-cv-01528 |
| v. | : : | |
| SHERIFF THEODORE JACKSON, in his Official capacity as the Fulton County Sheriff. | : : : : | |
| Defendant. | : : : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, a copy of the

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS WITHOUT PREJUDICE AND MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT** was electronically filed using Times New Roman 14 point type in

accordance with Local Rule 5.1 B with the Clerk of Court using the CM/ECF

system which will automatically send e-mail notification of such filing to all

attorneys of record.

     This 12th day of October 2015.

                                           */s/ Marvin A. Devlin*
                                           Marvin A. Devlin
                                           Georgia Bar No. 219969

**Marvin A. Devlin P.C.**
Marvin A. Devlin
6595-G Roswell Road
Suite 765
Atlanta, Georgia 30328
Tel: 404-538-6925
Fax: 404-537-3115
mad@marvindevlin.com