IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JENNIFER STEPHENS, FAYTH BOND, RITA GETTIS, KRISTI MAYO, DEONICA JONES, BELINDA ZACHARY, and TRACEY GENERAL, | CIVIL ACTION FILE NO.<br><br>1:16-cv-3461-RWS-JKL |
| Plaintiffs, | |
| v. | |
| FULTON COUNTY, SHERIFF THEODORE JACKSON, *in his Official capacity as the Fulton County Sheriff*, and JOHN DOES 1 & 2, *individually and in their official capacities as employees of the Fulton County Sheriff's Department and Fulton County,* | |
| Defendants. | |

## NON-FINAL REPORT AND RECOMMENDATION

This is a renewal action that was filed in the Superior Court of Fulton

County, Georgia, and removed to this Court.  The case is before the Court on

named Defendants Fulton County and Sheriff Theodore Jackson's Partial Motion

to Dismiss Plaintiffs' Complaint [Doc. 15].  Plaintiffs Jennifer Stephens, Fayth

Bond, Rita Gettis, Kristi Mayo, Deonica Jones, Belinda Zachary, and Tracey General oppose the motion.  [Doc. 16.]  For the reasons discussed herein, I **RECOMMEND** that Plaintiffs' motion be **GRANTED IN PART AND DENIED IN PART**.

I.   **Procedural History and Background[1]**

A.   **The First Complaint**

The claims in the current complaint were substantially brought against Fulton County, Jackson, and two John Doe defendants in an earlier case.[2] [*See* CM/ECF for the N.D. of Ga., case no. 1:13-cv-1528-RWS ("*Stephens I*"), Doc. 1.]  The complaint alleged claims for violations of 42 U.S.C. § 1983, Title VII, intentional infliction of emotional distress, false imprisonment, and negligent training.  [*Id.*]  The claims all centered around employee drug testing that the Defendants conducted in August 2012 at the Fulton County Jail.  [*See id.*]

The Defendants moved to dismiss the initial case in its entirety.  [Docs. 5, 6.]  Magistrate Judge Brill, then assigned to the case, recommended that (1) the § 1983 claims against the County be dismissed for failure to state a claim, (2) the

_____

[1] Much of this section repeats the summary in my order denying Plaintiffs' motion to remand.  [*See* Doc. 12.]

[2] I refer to Fulton County and Jackson as "Defendants" in this Report and Recommendation as they are the sole named defendants in the case.

2

Title VII claims against the County be dismissed because Fulton County was not the Plaintiffs' employer, (3) the state tort claims against Fulton County be dismissed on grounds of sovereign immunity, (4) the state law claims against Jackson be dismissed because Jackson was entitled to sovereign and official immunity, and (5) the federal claims brought against Jackson in his individual capacity be dismissed because of qualified immunity, but (6) the official capacity federal claims against Jackson go forward. [*Stephens I*, Doc. 9.] District Judge Story adopted Magistrate Judge Brill's report in full. [*Stephens I*, Doc. 11.]

Following discovery, Jackson moved for summary judgment, arguing that he had Eleventh Amendment immunity from the § 1983 claims, and was entitled to judgment on the Title VII claims. [*Stephens I*, Doc. 79-1 at 6, 20.] In lieu of filing a response, Plaintiffs moved to dismiss their own complaint without prejudice, conceding that the Court lacked jurisdiction over their § 1983 claim. [*Stephens I*, Doc. 98-1.] Over Defendants' opposition, I recommended that Plaintiffs' motion for voluntary dismissal be granted. [*Stephens I*, Doc. 102.] District Judge Story adopted that recommendation and dismissed the case on March 1, 2016. [*Stephens I*, Doc. 104.]

**B.     The Current Complaint**

Plaintiffs filed the instant complaint in the Superior Court of Fulton County, Georgia.  [Doc. 1-1.]  The complaint alleges the same facts as in *Stephens I*, but asserts some different claims.  [*Id.*]

The complaint alleges that Plaintiffs, who are deputized and civilian employees of the Fulton County Sheriff's Department, were required to submit to highly invasive and denigrating random urine drug screens.  Plaintiffs allege that they were forced to expose their private parts to the officers supervising the drug screen.  Several Plaintiffs were also forced to expose their private parts to other individuals who passed by while the urine samples were being collected.

Plaintiff Stephens, whose experience was more or less consistent with those of her co-Plaintiffs, alleges that when she reported to work at the Fulton County Jail, she was sent to the cafeteria for a random drug test. [Doc. 1-1. ¶ 25.] An officer escorted her to the women's locker room.  [*Id.* ¶ 27.]  She examined each of the three stalls and found that there was urine on the toilet seats and floor. [*Id.*]  The testing monitor from the Office of Professional Standards directed her to enter one of the stalls and wipe the toilet seat with tissue paper.  [*Id.*]  The stall

4

contained a large trash bag filled with half-empty cups of urine, some of which were spilling onto the floor.  [*Id*. ¶ 28.]

When Stephens began to close the stall door, the monitor stopped her and told her that the door would have to remain open.  [Doc. 1-1 ¶ 31.]  The officer watched Stephens as she attempted to urinate into the plastic cup.  [*Id*. ¶ 32.]  She was unable to provide a sufficient sample, so she returned to the cafeteria to drink more water.  [*Id*. ¶¶ 33-35.]  While she was waiting in the cafeteria, a male officer commented to her that she had "a good bladder."  [*Id*. ¶ 37.]  She also overheard one of the testing monitors discussing private details about other employees who had been tested that day.  [*Id*. ¶ 38.]  Stephens "began to feel fearful, violated, humiliated, nauseated, and unwell."  [*Id*. ¶ 39.]  After being ordered to drink a glass of orange juice, she became dizzy and vomited on the floor.  [*Id*. ¶ 41.]  She was given permission to leave, but became sick again as she attempted to reach a bathroom near her office.  [*Id*. ¶ 42.]

Plaintiffs assert that that Jackson "actively participated in and/or approved the decisions and actions complained of herein, and shared, knew of, condoned, ratified, and acquiesced in unlawful discriminatory motives and illegal conduct in the underlying actions."  [Doc. 1-1 ¶ 11.]  Plaintiffs also allege that Defendants

John Doe 1 & 2 are unnamed agents, managers, and employees of the Fulton County Sheriff's Department and of the Fulton County Sheriff and of Fulton County" and that they "ratified, conspired in, or in other ways participated in the discriminatory and illegal acts of Defendants Fulton County and the Fulton County Sheriffs Department." [*Id.* ¶ 12.]

Plaintiffs allege that they were subjected to unlawful sex discrimination in violation of Title VII. [Doc. 1-1 ¶¶ 114-16.] Next, they assert claims under § 1983, alleging that Defendants deprived them of their Fourteenth Amendment right to be free from discrimination, and their Fourth Amendment right to be free from unreasonable searches and seizures. [*Id.* ¶¶ 117-24.] Plaintiffs also assert state-law claims for violation of the Georgia Constitution, invasion of privacy, negligence per se, intentional infliction of emotional distress, false imprisonment, and negligent training or failure to train. [*Id.* ¶¶ 125-50.]

The Defendants removed the action to this Court, asserting federal question and supplemental jurisdiction. [Doc. 1.] Plaintiffs moved for a remand to state court, which the Court denied. [Doc. 12.]

### C.    Partial Motion to Dismiss

On February 23, 2017, Fulton County and Jackson filed a "Partial Motion to Dismiss Plaintiffs' Complaint."  [Doc. 15.]  Defendants argue that Plaintiff's Title VII claim is time-barred because Plaintiffs filed their second complaint (the operative complaint in this action) more than ninety days after receiving their right-to-sue letters from the EEOC.  [*Id.* at 4-7.]   Defendants also argue that all state law claims against Fulton County and Jackson are barred by the doctrine of sovereign immunity.  [*Id.* at 7-9.]  Defendants next argue that Plaintiffs' § 1983 claims against Fulton County and Jackson in his official capacity must be dismissed because they are not "persons" subject to suit under § 1983.  [*Id.* at 9.] Finally, Defendants argue that the claims against John Does 1 and 2 should be dismissed as fictitious party pleading.  [*Id.*]

Plaintiffs oppose the motion.  [Doc. 16.]  With regard to the Title VII claim, Plaintiffs do not dispute that their renewed Title VII claim is untimely; however, they request that the limitations period be equitably tolled.   [*Id.* at 7-10.] Plaintiffs do not respond to the Defendants' sovereign immunity argument.  With respect to the § 1983 claims, Plaintiffs do not respond to Defendants' argument that Fulton County and Jackson (when acting in his official capacity) are not

persons under § 1983. Plaintiffs instead contend that they have sufficiently alleged that Jackson failed to train and supervise employees and created a policy and custom that caused Defendants' employees to conduct improper and unconstitutional drug tests, and that Jackson acted with deliberate indifference in violating Plaintiffs' constitutional rights. [*Id.* at 10-12.] Finally, Plaintiffs do not respond to the portion of Defendants' motion seeking the dismissal of the John Doe defendants.

## II.    Discussion

### A.    Standard on Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555. Providing only "labels and conclusions" is insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.* The court is not required to accept as true legal conclusions couched

as factual statements.  *Iqbal*, 556 U.S. at 678.   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Id*. at 679 (internal quotation marks, bracket, and citation omitted).

**B.    Plaintiffs' Untimely Title VII Claim Is Not Subject to Equitable Tolling**

Under Title VII, a plaintiff must bring suit within 90 days of her receipt of a right-to-sue letter from the EEOC.  42 U.S.C. § 2000e-5(f)(1).  Here, each of the Plaintiffs received her right-to-sue letter in February 2013, [Doc. 16 at 50-56], and Plaintiffs timely filed their initial complaint in *Stephens I* in May 2013.  The complaint in the present action was not filed until August 12, 2016, long after the ninety-day period had expired.

Plaintiffs appear to concede that their Title VII claim asserted in this lawsuit is not timely, and argue instead that the limitations period should be equitably tolled.  Plaintiffs contend that they diligently litigated their Title VII claim in *Stephens I*, and had no choice but to dismiss that case because, while that case was pending, the Eleventh Circuit held that federal courts lack subject matter jurisdiction to adjudicate claims against Georgia sheriff's departments.  [Doc. 16 at 9-10 (citing *Pellitteri v. Prine*, 776 F.3d 777 (11th Cir. 2015)).]

It is well-established that "the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990).  "Equitable tolling is an extraordinary remedy which should be extended only sparingly." *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quotation omitted).  "A court may toll a statute of limitations only if it finds that an inequitable event prevented the plaintiff from filing a timely action, *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993), and the plaintiff has the burden in establishing the grounds for equitable tolling." *Patel v. Ga. Dep't of Behavioral Health & Dev.*, 517 F. App'x 750, 753 (11th Cir. 2013).  Courts "need not consider whether extraordinary circumstances exist" if the plaintiff's delay in filing "exhibits a lack of due diligence." *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007).

I am not persuaded that Plaintiffs acted with requisite diligence to warrant equitable tolling of the 90-day period.  While it may be true that Plaintiffs diligently prosecuted their Title VII claim in *Stephens I*, they do not explain why they waited over 165 days after dismissal of *Stephens I* to file the instant complaint.  This Court dismissed *Stephens I* on March 1, 2016, and as of that time, Plaintiffs were aware of all the facts and circumstances giving rise to their

Title VII claims.  Giving Plaintiffs the benefit of the doubt that they had no choice but to dismiss *Stephens I* and re-file in state court, I see no reason why Plaintiffs did not promptly re-file their lawsuit.  Evan assuming that the voluntary dismissal of *Stephens I* reset the clock on the Title VII claim, Plaintiffs' claim would still be untimely by 75 days.[3]  In sum, Plaintiffs have failed to carry their burden to demonstrate that the limitations period for their Title VII claim should be tolled through August 12, 2016, when this action was filed.  Accordingly, I **RECOMMEND** that Plaintiffs' Title VII claims (Counts I and II) be **DISMISSED WITH PREJUDICE**.

### C.   The State Law Claims Against Sherriff Jackson and Fulton County Should be Dismissed.

Defendants contend that Plaintiffs' state-law claims are barred by sovereign immunity.  [Doc. 15-1 at 7-8.]  Defendants argue that Georgia law provides sovereign immunity to counties and state officials sued in their official

---

[3] To be clear, I am not suggesting that Plaintiffs would have a winning argument that the limitations period should begin running anew.  My point is simply that if the limitations period were equitably tolled, it must start running again at some point in time.  Because as of March 1, 2016, Plaintiffs were aware of their claim, believed that it could not be maintained in federal court, and were able to initiate a new suit, it makes sense to conclude that if the clock started running again, it would have been on March 1.

11

capacity, and that this immunity has not been waived.  [*Id.*]  Plaintiffs do not respond to this argument.

On November 6, 2013, Magistrate Judge Brill recommended dismissal of these same state-law claims against Sherriff Jackson on sovereign immunity grounds, [*see Stephens I* Doc. 9 at 23-24], and District Judge Story adopted that recommendation, [*see Stephens I* Doc. 11].  The same reasoning applies here, especially in view of the fact that Plaintiffs do not allege that either Defendant's sovereign immunity has been waived for purpose of this suit.  Accordingly, I **RECOMMEND** that Plaintiffs' state law claims, Counts V, VI, VII, VIII, IX, and X, be **DISMISSED WITH PREJUDICE**.

### D.    The Section 1983 Claims Against Fulton County and Jackson in his Official Capacity Should Be Allowed to Proceed.

Defendants next contend that Plaintiffs' § 1983 claims (Counts III and IV) fail as a matter of law because neither Fulton County nor Jackson in his official capacity qualifies as a "person" capable of being sued under § 1983.  [Doc. 15-1 at 9.]  Plaintiffs do not respond to this argument.  Rather, Plaintiffs argue that they have sufficiently alleged that Jackson can be liable under a theory of supervisory liability for violations of Plaintiffs' civil rights.  Plaintiffs specifically point out that they have alleged that Jackson failed to train and supervise his

employees on how to conduct legal drug tests, and that this failure created a custom and policy that caused "Defendants' employees to conduct an improper and unconstitutional drug test which violated Plaintiffs' clearly established constitutional rights." [Doc. 16 at 11-12.]

Defendants' argument essentially boils down to a bald conclusion that Fulton County and Jackson are state actors and therefore not "persons" under § 1983. [Doc. 15-1 at 9.] But the law is not so black-and-white. Turning first to Fulton County, the U.S. Supreme Court has held that county governments *can* be "persons" for purposes of § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *see also McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004); *Pedraza v. Hall Cty., Ga.*, No. 2:14-CV-00311-RWS, 2015 WL 1478930, at *2 (N.D. Ga. Mar. 31, 2015) ("Local government units such as counties constitute "persons" subject to suit under Section 1983."). "[T]o impose § 1983 liability on a [county], a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell*, 293 F.3d at 1289. In addition, to establish that an unconstitutional policy or custom existed, a plaintiff must (1) show the county

13

"has authority and responsibility over the governmental function in issue" and (2) identify the county officials who "speak with final policymaking authority" regarding the challenged policy or custom. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (*en banc*). Defendants make no argument with respect to any of these factors. Nor do Defendants point to any other basis on which this Court may dismiss the § 1983 claims against Fulton County. Accordingly, I conclude that Defendants have not carried their burden to show that the § 1983 claims against Fulton County should be dismissed under Rule 12(b)(6).

As for Jackson, whether he qualifies as a "person" under § 1983 depends on whether he is acting as an arm of the state when promulgating the drug screening rules in this case. If the Court concludes that he is acting as an arm of the state when performing in his official capacity, he would essentially be acting as the state and therefore not qualify as a "person" under § 1983. *Molette v. Georgia*, 469 F. App'x 766, 768 (11th Cir. 2012) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Contrary to Defendants' argument, the Court cannot assume that a sheriff acting in his official capacity is always acting as an arm of the state. To make

14

such a determination, the Eleventh Circuit has adopted a "function-specific approach." *Stanley v. Israel*, 843 F.3d 920, 924 (11th Cir. 2016) (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) ("Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to rise.")).  Under that approach, the Court must weigh four factors with respect to the function:  "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders*, 338 F.3d at 1309.

Defendants do not mention these factors anywhere in their brief.  My own research indicates that the Eleventh Circuit has repeatedly held that under Georgia law, a sheriff acts as an arm of the state, rather than an employee of a county, when setting policies at a county jail.  *See Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1325 (11th Cir. 2005) (holding that Georgia sheriff functions as arm of state when promulgating policies and procedures governing conditions of confinement at county jail); *Manders*, 338 F.3d at 1315 (recognizing Georgia sheriff's "authority and duty to administer the jail in his

jurisdiction flows from the State, not [the county]").  Likewise, in *Pellitteri v. Prine*, the Eleventh Circuit held that a Georgia sheriff acts as an arm of the state when he exercises his power to hire and fire deputies.  776 F.3d 777, 780 (11th Cir. 2015).

The above-cited cases may ultimately support a finding that Jackson was, as a matter of law, acting as an arm of the state.  The Eleventh Circuit, however, has instructed lower courts to analyze the specific "function" that the sheriff engaged in.  Given the complete absence of analysis in Defendants' brief, I hesitate to perform such an inquiry without any guidance from the parties.  For example, the plaintiffs in this case include both deputized and civilian employees, and it is not altogether clear whether that should make a difference.  Ultimately, Defendants may make a compelling argument that Jackson acted as an "arm of the state" with respect to the Plaintiffs in this case and is, therefore, not a "person" under § 1983; however, on this record and absent more thorough briefing, that is a determination best left for another day.

Accordingly, I **RECOMMEND** that Defendants' motion to dismiss as it relates to the § 1983 claims against Fulton County and Jackson in his official capacity, Counts III and IV, be **DENIED**.

16

**E.    The Claims Against the John Doe Defendants Should Be Dismissed Because Fictitious-Party Pleading is Not Permitted in Federal Court.**

Finally, Defendants seek the dismissal of the "John Doe" defendants. Plaintiffs do not respond to this argument.  As a general rule, fictitious-party pleading is not permitted in federal court.  *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).  The "limited exception to this rule [is] when the plaintiff's description of the defendant is so specific [that use of a fictitious name is] 'at the very worst, surplusage.'" *Id*. (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).  Plaintiffs' complaint here provides no details describing any of the John Doe defendants.  Accordingly, I **RECOMMEND** that Plaintiffs' claims against the John Doe defendants be **DISMISSED**.

## III.    Conclusion

In light of the above, I **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.  I recommend that Plaintiffs be allowed to proceed solely with their § 1983 claims against Fulton County and Jackson in his official capacity and that all other claims be **DISMISSED WITH PREJUDICE**.

IT IS SO RECOMMENDED this 7th day of July, 2017.

JOHN K. LARKINS III
United States Magistrate Judge